1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   CAROL MILLS,                                  No. 2:17-cv-00367-JAM-KJN

12                    Plaintiff,

13          v.                                     FINDINGS AND RECOMMENDATIONS

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                     Defendant.
16

17

18          Plaintiff Carol Mills seeks judicial review of a final decision by the Commissioner of

19   Social Security ("Commissioner") denying her application for Disability Insurance Benefits

20   ("DIB") under Title II of the Social Security Act ("Act").[1]  In her motion for summary judgment,

21   plaintiff principally argues that the decision of the administrative law judge ("ALJ") is based

22   upon legal error and is not supported by substantial evidence in the record.  (See ECF No. 12.)

23   The Commissioner opposed plaintiff's motion and filed a cross-motion for summary judgment.

24   (ECF No. 13.)  Thereafter, plaintiff filed a reply brief.  (ECF No. 14.)

25          After carefully considering the record and the parties' briefing, the court recommends that

26   plaintiff's motion for summary judgment be DENIED, the Commissioner's cross-motion for

27

28   _____
     [1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15).

                                                1

1  summary judgment be GRANTED, and the Commissioner's final decision be AFFIRMED.

2  I.  BACKGROUND

3      Plaintiff was born on November 6, 1967 and has a high school education.[2]

4  (Administrative Transcript ("AT") 35, 196.)  On April 2, 2013, plaintiff applied for DIB, alleging

5  that her disability began on October 25, 2012.  (AT 196–98, 207.)  Plaintiff claimed that she was

6  disabled due to spondylosis with myelopathy, depressive disorder, hyperlipidemia, hypertensive

7  disorder, anemia, migraine, obesity, asthma, spinal stenosis, and spinal fusion.  (AT 282.)  After

8  plaintiff's application was denied initially and on reconsideration, an ALJ conducted a hearing on

9  March 5, 2015.  (AT 48–98.)  The ALJ subsequently issued a decision dated May 4, 2015,

10  determining that plaintiff had not been under a disability as defined in the Act, from October 25,

11  2012, the alleged onset date, through the date of the ALJ's decision.  (AT 30–39.)  The ALJ's

12  decision became the final decision of the Commissioner when the Appeals Council denied

13  plaintiff's request for review on December 20, 2016.  (AT 1–5.)  Plaintiff subsequently filed this

14  action on February 18, 2017, to obtain judicial review of the Commissioner's final decision.

15  (ECF No. 1.)

16  II.  ISSUES PRESENTED

17      On appeal, plaintiff raises the following issues:  (1) whether the ALJ improperly weighed

18  opinion evidence in the record and (2) whether the ALJ improperly discounted plaintiff's

19  credibility.

20  III.  LEGAL STANDARD

21      The court reviews the Commissioner's decision to determine whether (1) it is based on

22  proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record

23  as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial

24  evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340

25  F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable

26  _____

27  [2] Because the parties are familiar with the factual background of this case, including plaintiff's
    medical and mental health history, the court does not exhaustively relate those facts in this order.
    The facts related to plaintiff's impairments and treatment will be addressed insofar as they are

28  relevant to the issues presented by the parties' respective motions.

mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th

Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is

responsible for determining credibility, resolving conflicts in medical testimony, and resolving

ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The

court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational

interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

      "[A] reviewing court, in dealing with a determination or judgment which an

administrative agency alone is authorized to make, must judge the propriety of such action solely

by the grounds invoked by the agency." Sec. & Exch. Comm'n v. Chenery Corp., 332 U.S. 194,

196 (1947). At the same time, in the context of Social Security appeals, "[a]s a reviewing court,

we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's

opinion. It is proper for us to read the paragraph . . . and opinion, and draw inferences . . . if those

inferences are there to be drawn." Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989).

IV.    DISCUSSION

    A.    Summary of the ALJ's Findings

      The ALJ evaluated plaintiff's entitlement to DIB pursuant to the Commissioner's standard

five-step analytical framework.[3] Preliminarily, the ALJ determined that plaintiff meets the

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social
Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled
persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as
an "inability to engage in any substantial gainful activity" due to "a medically determinable
physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel
five-step sequential evaluation governs eligibility for benefits under both programs. See 20
C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-
42 (1987). The following summarizes the sequential evaluation:

    Step one: Is the claimant engaging in substantial gainful activity? If so, the
    claimant is found not disabled. If not, proceed to step two.

    Step two: Does the claimant have a "severe" impairment? If so, proceed to step
    three. If not, then a finding of not disabled is appropriate.

    Step three: Does the claimant's impairment or combination of impairments meet or
    equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the
    claimant is automatically determined disabled. If not, proceed to step four.

insured status requirements of the Act through December 31, 2017. (AT 32.) At step one, the

ALJ concluded that plaintiff has not engaged in substantial gainful activity since October 25,

2012, the alleged onset date. (Id.) At step two, the ALJ found that plaintiff has the following

severe impairment: cervical fusion residuals. (Id.) However, at step three the ALJ concluded

that plaintiff does not have an impairment or combination of impairments that meets or medically

equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

(AT 34.)

Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity

("RFC"), finding that plaintiff could perform a wide range of light work as defined in 20 C.F.R.

§ 404.1567(b), except that plaintiff:

> is limited to lifting-carrying 20 pounds occasionally and 10 pounds frequently; is limited to sitting six hours and standing-walking six hours in an eight-hour workday; cannot climb ladders, ropes, and scaffolds; is limited to occasional handling and fingering with the left hand; is not able to reach overhead with the left arm; is limited to rotating her neck no more than 120 degrees occasionally; and has full range of motion of her trunk (75 degrees in both directions).

(AT 34.) At step four, the ALJ determined that plaintiff was unable to perform any past relevant

work. (AT 37.) However, at step five, the ALJ found that, in light of plaintiff's age, education,

work experience, RFC, and the vocational expert's testimony, there were jobs that existed in

significant numbers in the national economy that plaintiff could have performed. (AT 38.) Thus,

the ALJ concluded that plaintiff had not been under a disability, as defined in the Act, from

October 25, 2012 through May 4, 2015. (AT 38–39.)

---

Step four: Is the claimant capable of performing her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

4

1          B.       Plaintiff's Substantive Challenges to the Commissioner's Determinations

2                   1.       *Whether the ALJ improperly weighed opinion evidence in the record*

3          Plaintiff argues that the ALJ committed reversible error when evaluating the medical

4   opinions in the record because the ALJ "gave no reasons to discount the lifting restrictions or less

5   than occasional handling and fingering limitations" opined by Dr. Pauline Perez, and because the

6   ALJ failed to address the opinion of Dr. Ben Waldau. (ECF No. 12 at 10–11.)

7          The weight given to medical opinions depends in part on whether they are proffered by

8   treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F.3d 1195,

9   1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Generally speaking,

10  a treating physician's opinion carries more weight than an examining physician's opinion, and an

11  examining physician's opinion carries more weight than a non-examining physician's opinion.

12  Holohan, 246 F.3d at 1202.

13         To evaluate whether an ALJ properly rejected a medical opinion, in addition to

14  considering its source, the court considers whether (1) there are contradictory opinions in the

15  record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted

16  opinion of a treating or examining medical professional only for "clear and convincing" reasons.

17  Lester, 81 F.3d at 830–31. In contrast, a contradicted opinion of a treating or examining

18  professional may be rejected for "specific and legitimate" reasons. Id. at 830. While a treating

19  professional's opinion generally is accorded superior weight, if it is contradicted by a supported

20  examining professional's opinion (supported by different independent clinical findings), the ALJ

21  may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing

22  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to

23  weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[4] except that the ALJ

24  in any event need not give it any weight if it is conclusory and supported by minimal clinical

25  findings. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory,

26

27  ───────────
    [4] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3)
    nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency;
28  and (6) specialization. 20 C.F.R. § 404.1527.

minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a

non-examining professional, by itself, is insufficient to reject the opinion of a treating or

examining professional. Lester, 81 F.3d at 831.

Additionally, a conclusory statement by a treating physician that a claimant is disabled is

not binding on the Commissioner. As the SSA's regulations explain:

> We are responsible for making the determination or decision about
> whether you meet the statutory definition of disability. In so doing,
> we review all of the medical findings and other evidence that
> support a medical source's statement that you are disabled. A
> statement by a medical source that you are "disabled" or "unable to
> work" does not mean that we will determine that you are disabled.

20 C.F.R. § 404.1527(d)(1). "In addition, the regulations give more weight to opinions that are

explained than to those that are not." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001)

(citing 20 C.F.R. § 404.1527(d)(3)).

### i. **Opinions of Dr. Pauline Perez**

Dr. Perez provided three different medical source statements, regarding plaintiff's

limitations. (See AT 603–05, 613–15, 687–89.) Each of these opinions was presented on a

conclusory check-box form, with only minimal explanation. (Id.) Because these opinions were

conclusory and supported by minimal clinical findings, the ALJ was not required to give them

any weight. See Meanel, 172 F.3d at 1114. However, while the ALJ did not adopt all of the

limitations opined by Dr. Perez, he did not entirely discount Dr. Perez's opinions either.

> [The ALJ gave] some weight to the general conclusions regarding
> limits on lifting and using her arms to reach and manipulate.
> [Concluding that] her extreme limitations, such as never being able
> to bend and zero percent of the left hand for handling and no
> reaching bilaterally are not at all supported by the treatment notes
> or other evidence in the record. These limitations are inconsistent
> with the fact that she cares for her grandchild.

(AT 37.)

Plaintiff argues that "the ALJ gave no reason to discount the lifting restrictions or less

than occasional handling and fingering limitations." (ECF No. 12 at 10.) However, as explained

the ALJ did not completely discount these limitations opined by Dr. Perez. The ALJ limited

plaintiff "to lifting-carrying 20 pounds occasionally and 10 pounds frequently. . . [and] to

1  occasional handling and fingering with the left hand." (AT 34.) As such, the ALJ did not

2  discount Dr. Perez's opined limitations, rather he concluded that the degree of limitations opined

3  was unwarranted.

4  Importantly, an RFC "is the most [one] can still do despite [his or her] limitations" and it

5  is "based on all the relevant evidence in [one's] case record," rather than a single medical opinion

6  or piece of evidence. 20 C.F.R. § 404.1545(a)(1). "It is clear that it is the responsibility of the

7  ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan v. Halter,

8  260 F.3d 1044, 1049 (9th Cir. 2001) (citing 20 C.F.R. § 404.1545). The ALJ's RFC

9  determination need not precisely reflect any particular medical provider's assessment. See Turner

10  v. Comm'r Soc. Sec. Admin., 613 F.3d 1217, 1222–23 (9th Cir. 2010) (the ALJ properly

11  incorporated physician's observations in the RFC determination while, at the same time, rejecting

12  the implication that plaintiff was unable to "perform simple, repetitive tasks in an environment

13  without public contact or background activity"). Thus, the ALJ appropriately crafted an RFC,

14  based upon all of the medical evidence, rather than adopting the exact limitations opined by Dr.

15  Perez.

16  Moreover, the ALJ clearly explained that the record did not support the extreme

17  limitations opined by Dr. Perez. (See AT 35–37.) Specifically, the ALJ pointed out that after

18  plaintiff had fusion surgery in October 2012, the plaintiff was satisfied with the procedure, she

19  experienced less issues with numbness, and a cervical spine x-ray in March 2013 showed no

20  change in the fusion and no change in the cervical alignment with flexion or extension. (AT 35.)

21  These conclusions are supported by medical evidence in the record. On December 17, 2012,

22  plaintiff reported to Dr. Waldau that she was very satisfied with the surgery and that the

23  numbness in her left leg was improved. (AT 425.) On May 4, 2013, Dr. Perez characterized

24  plaintiff's prior surgery as a success, noting that "she no longer has tingling numbness or

25  weakness in her left arm." (AT 700.) Finally, the ALJ's characterization of the findings from the

26  March 11, 2013 x-ray are accurate. (See AT 574.)

27  In addition, the ALJ appropriately determined that the extreme limitations opined by Dr.

28  Perez were not consistent with the plaintiff's ability to care for her grandchild. This conclusion is

supported by the hearing testimony of plaintiff and her lay witness.  (See AT 76–83.)  While

plaintiff did testify that "most of the time" she has someone help her change her grandchild's

diapers (AT 82), the ALJ still appropriately relied on the fact that plaintiff admitted to watching

her grandchild for four to six hours in a day (AT 83) as evidence that undermines the extreme

limitations opined by Dr. Perez.

Therefore, the ALJ did not err when weighing the opinions of Dr. Perez.  Even though the

ALJ was not required to give any weight to Dr. Perez's conclusory check-box opinions, see

Meanel, 172 F.3d at 1114, he gave those opinions some weight, while providing specific and

legitimate reasons, supported by substantial evidence, for not adopting the severity of the

restrictions that Dr. Perez opined.

ii.    **Opinion of Dr. Ben Waldau**

After a neurological follow-up examination on March 11, 2013, Dr. Waldau noted

> I think Ms. Mills should go back to no heavy lifting more than five
> pounds for at least six months and maybe for a lifetime. . . .

> She asked about disability for her job, and I think her request is
> very reasonable given that as a cook she routinely has to lift 30
> pounds, and given her cervical spine fusion, that creates a lot of
> stress on her neck and is probably going to result in further muscle
> injury in the future. . . .

> She is not able to perform her job without doing heavy lifting, and
> therefore I think that she qualifies for disability.

(AT 292–93.)

Plaintiff argues that the ALJ committed reversible error because he did not address this

"opinion" of Dr. Waldau.  (ECF No. 12 at 11.)  However, when "interpreting the evidence and

developing the record, the ALJ does not need to 'discuss every piece of evidence.'"  Howard ex

rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (citations omitted).  Importantly, "the

ALJ is not required to discuss evidence that is neither significant nor probative."  Id.

Here, while the ALJ did not expressly discuss these statements by Dr. Waldau, he did

expressly discuss the cervical x-ray that was ordered by Dr. Waldau during that March 11, 2013

visit, and which showed no change in plaintiff's fusion construct or cervical alignment.  (See AT

35, 293, 573–74.)  Such an x-ray is objective medical evidence suitable for determining plaintiff's

8

RFC, whereas Dr. Waldau's statements are imprecise estimates of plaintiff's future condition. (See AT 293 ("maybe for a lifetime;" "probably going to result in further muscle injury;" "I think that she qualifies for disability).)

Additionally, the ALJ clearly considered Dr. Waldau's treatment notes, as he cited to when plaintiff reported to Dr. Waldau that she was satisfied with the fusion surgery and her numbness had improved. (See AT 35, 296.) Therefore, while the ALJ may not have expressly discussed Dr. Waldau's treatment notes on March 11, 2013, he certainly considered them when determining plaintiff's RFC.

Moreover, as explained, the ALJ is responsible for determining plaintiff's RFC and need not give any weight to a medical provider's conclusory statement that a plaintiff is disabled. See 20 C.F.R. §§ 404.1545, 404.1527(d)(1); Vertigan, 260 F.3d at 1049. When Dr. Waldau concluded that plaintiff is disabled because "she is not able to perform her job without doing heavy lifting" (AT 293), his conclusion was not based on the Social Security Administration's regulations, and failed to account for other jobs in the national economy that plaintiff might be able to perform. When Dr. Waldau stated that plaintiff should not lift more than five pounds "maybe for a lifetime" (AT 293), he did not provide a definitive opinion that could serve as a legitimate basis for the ALJ's decision. These "opinions" are too imprecise to assist the ALJ in crafting plaintiff's RFC.

Therefore, Dr. Waldau's statements were neither significant nor probative enough to constitute an opinion for the purpose of determining plaintiff's RFC. As such, the ALJ did not err when he did not explicitly discuss these statements in his decision. See Howard ex rel. Wolff, 341 F.3d at 1012.

2. *Whether the ALJ improperly discounted plaintiff's credibility*

Plaintiff argues that "[t]he ALJ's adverse credibility determination [against plaintiff] is not supported by substantial evidence." (ECF No. 12 at 12.) In Lingenfelter v. Astrue, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

/////

9

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking. . . ." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains.'" Thomas v. Barnhart, 278 F.3d 947, 958–59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id. at 959.

As an initial matter, the court notes that the ALJ did not entirely discredit plaintiff's allegations of functional limitations due to her cervical fusion. Indeed, the ALJ limited plaintiff to "lifting-carrying 20 pounds occasionally and 10 pounds frequently. . . [no climbing of] ladders, ropes, and scaffolds. . . occasionally handling and fingering with the left hand. . . [no] reach[ing] overhead with the left arm. . . [and] rotating her neck no more than 120 degrees occasionally."

(AT 34.)  Nevertheless, to the extent that the ALJ discounted plaintiff's testimony regarding her

symptoms and functional limitations, the ALJ provided several specific, clear, and convincing

reasons for doing so.  The ALJ determined that:

> [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible [because] . . .
>
> [She] has described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. . . .
>
> Despite the allegations of symptoms and limitations preventing all work, the record reflects that the [plaintiff] went on a vacation since the alleged onset date. . . .
>
> [Additionally,] the objective findings in this case fail to provide strong support for the [plaintiff]'s allegations of disabling symptoms and limitations.

(AT 36.)

### i.     Objective medical evidence

"[A]fter a claimant produces objective medical evidence of an underlying impairment, an

ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence

to fully corroborate the alleged severity of pain."  Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir.

2005) (citing Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991)).  Although lack of medical

evidence cannot form the sole basis for discounting plaintiff's subjective symptom testimony, it is

nevertheless a relevant factor for the ALJ to consider.  Burch, 400 F.3d at 681.

Here, the ALJ relied on the objective medical evidence in the record, as one reason for

discounting the extent of plaintiff's subjective complaints.  The ALJ specifically reasoned:

> The [plaintiff] was born with a birth defect in her neck.  It never caused any problems until 2012 when she was diagnosed with cervical spinal stenosis [AT 609, 700].  The [plaintiff] subsequently had fusion surgery in October 2012 [AT 609].  Prior to her surgery, the [plaintiff] had severe compression of her spinal cord at the C1 level [AT 349].  Following the surgery, the claimant stated that she was very satisfied with her operation and that the numbness was much better in her left leg [AT 425].  During the hearing the claimant testified that she cannot work because of numbness in her leg.  This testimony conflicts with her initial statement following surgery.  An x-ray of the cervical spine taken in March 2013

11

showed no change in the C4 posterior fusion construct [AT 573–74]. There was also no change in cervical alignment with flexion and extension [AT 573–74]. This evidence supports a finding that the claimant is limited to a wide range of light work.

(AT 35.)

The ALJ's characterization of plaintiff's medical condition is consistent with and supported by objective medical evidence in the record. (See AT 349, 425, 573–74, 609, 700.) While plaintiff strongly disagrees with the way the ALJ characterized her spinal condition (see ECF No. 12 at 8), the ALJ's conclusions are nonetheless appropriate. As explained, the ALJ's conclusions and characterization of the plaintiff's condition are supported by substantial evidence in the record. Therefore, the court may not reverse the ALJ's decision based on plaintiff's disagreement with the ALJ's interpretation of the record. See Tommasetti, 533 F.3d at 1038 (9th Cir. 2008) ("when the evidence is susceptible to more than one rational interpretation" the court will not reverse the ALJ's decision).

### ii. Daily activities

The ALJ also determined that plaintiff's daily activities did not support her allegations of disabling symptoms and limitations. (AT 36.) "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. . . . Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Molina, 674 F.3d at 1112–13 (citations and quotation marks omitted); see also Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (ALJ properly considered claimant's ability to care for her own needs, cook, clean, shop, interact with her nephew and boyfriend, and manage her finances and those of her nephew in the credibility analysis); Morgan v. Comm'r of Soc. Sec., 169 F.3d 595, 600 (9th Cir. 1999) (ALJ's determination regarding claimant's ability to "fix meals, do laundry, work in the yard, and occasionally care for his friend's child" was a specific finding sufficient to discredit the claimant's credibility).

/////

12

1    Here, the ALJ specifically relied on plaintiff's own report that she has no problems with

2   personal care, and the that she cares for her grandchild, is able to drive, shop for groceries, and

3   pay bills.  (AT 36.)  These conclusions are supported by plaintiff's June 11, 2013 Function

4   Report, as well as the hearing testimony of plaintiff and her lay witness.  (See AT 76–83, 245–

5   49.)  Therefore, substantial evidence supports the ALJ's finding that plaintiff's daily activities are

6   inconsistent with her allegations of disabling symptoms and limitations.

7        To be sure, the record also contains some contrary evidence—such as plaintiff's testimony

8   that her daughter helps her wash her hair, and that plaintiff does not drive alone because she

9   needs someone else to look to her left for her—suggesting that plaintiff's activities are more

10  limited.  (AT 71–72, 84–85.)  However, it is the function of the ALJ to resolve any ambiguities,

11  and the court finds the ALJ's assessment to be reasonable and supported by substantial evidence.

12  See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (affirming ALJ's credibility

13  determination even where the claimant's testimony was somewhat equivocal about how regularly

14  she was able to keep up with all of the activities and noting that the ALJ's interpretation "may not

15  be the only reasonable one").  As the Ninth Circuit explained:

16          It may well be that a different judge, evaluating the same evidence,
            would have found [the claimant's] allegations of disabling pain
17          credible.  But, as we reiterate in nearly every case where we are
            called upon to review a denial of benefits, we are not triers of fact.
18          Credibility determinations are the province of the ALJ. . . . Where,
            as here, the ALJ has made specific findings justifying a decision to
19          disbelieve an allegation of excess pain, and those findings are
            supported by substantial evidence in the record, our role is not to
20          second-guess that decision.

21  Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

22              iii.         Improper reason with other proper reasons for discounting

23                          credibility

24       The ALJ also relied on the fact that plaintiff took a cruise since the alleged onset date of

25  her symptoms, as a reason to discount plaintiff's credibility.  Specifically, the ALJ observed:

26          In March 2014, the claimant was preparing to take a trip that
            required flying in a plane and taking a boat [AT 696].  Although a
27          vacation and a disability are not necessarily mutually exclusive, the
            claimant's decisions to go on a vacation tends to suggest that the
28          alleged symptoms and limitations may have been overstated.

1    (AT 36.) Plaintiff argues that the fact that plaintiff went on a cruise "does not detract from

2    credibility. A cruise is the opposite of work. Disabled people go on cruises all the time for the

3    very reason they are very accommodating." (ECF No. 14 at 3.) The fact that plaintiff took a

4    cruise is ambiguous. The ALJ's interpretation that taking a cruise is inconsistent with total

5    disability is a reasonable one. Therefore, the court may not reverse the ALJ's decision because

6    plaintiff interprets this evidence differently.

7            In any event, even if this were not a legitimate reason to discount plaintiff's testimony, the

8    error is harmless because the ALJ provided other valid reasons for only partially crediting

9    plaintiff's testimony. See Molina, 674 F.3d at 1115 (harmless error when ALJ provided one or

10   more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that

11   were supported by the record).

12           Therefore, the ALJ did not improperly discount plaintiff's credibility because the ALJ's

13   credibility finding is supported by substantial evidence in the record, and as such, the court will

14   not second-guess the ALJ's conclusions. See Thomas, 278 F.3d at 959.

15   V.     CONCLUSION

16           For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

17           1.     Plaintiff's motion for summary judgment (ECF No. 12) be DENIED.

18           2.     The Commissioner's cross-motion for summary judgment (ECF No. 13) be

19                  GRANTED

20           3.     The final decision of the Commissioner be AFFIRMED, and judgment be entered

21                  for the Commissioner.

22           4.     The Clerk of Court be ordered to close this case.

23           These findings and recommendations are submitted to the United States District Judge

24   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14)

25   days after being served with these findings and recommendations, any party may file written

26   objections with the court and serve a copy on all parties. Such a document should be captioned

27   "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections

28   shall be served on all parties and filed with the court within fourteen (14) days after service of the

objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

IT IS SO RECOMMENDED.

Dated:  November 8, 2017

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE